UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## 24-60059-CR-COHN/VALLE

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 982(a)(7)

FILED BY _____ MP _____ D.C.

Apr 15, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

vs.

JASON MATTHEW BONAVENTURA,
SAMUEL STEPHEN PANY,
ANTHONY JOSEPH GOULD, and
JOSEPH ANTHONY ZAPPOLI III,

Defendants.

_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times material to this Information:

### The Medicare Program

1.     The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was subdivided into multiple program "parts." Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

3.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

## Durable Medical Equipment

4.      DME was equipment designed for everyday or extended use and for a medical purpose, such as orthotic devices, wheelchairs, prosthetic limbs, wheelchairs, and oxygen concentrators.

5.      DME companies, physicians, and other health care providers that provided services to beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application, CMS Form 855S, which contained a certification that stated:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 1B of this application. The Medicare laws, regulations, and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions[,] including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b)[.]
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

6.      CMS Form 855S also required applicants to disclose to Medicare any individual or organization with an ownership interest, a financial interest, or managing control of a DME supplier. This included: (i) all individuals and organizations with five percent or more of an

2

ownership stake, either direct or indirect, in the DME supplier; (ii) all individuals or organizations with a partnership interest in the DME supplier, regardless of the percentage of ownership; (iii) all organizations with "managing control" over the DME supplier; and (iv) all "managing employees."

7.      CMS Form 855S defined "managing employee" as "a general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts the day-to-day operations" of the DME supplier, "either under contract or through some other arrangement, whether or not the individual is a W-2 employee" of the DME supplier.

8.      If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

9.      Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

10.     Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically, either directly or through a billing company.

11.     A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the DME provided to

the beneficiary, the date the DME was provided, the cost of the DME, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

12.     A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed. A claim for DME did not qualify for reimbursement if procured through the payment of illegal kickbacks and bribes.

### Telemedicine

13.     Telemedicine provided a means of connecting patients to doctors by using telecommunications technology, such as the internet or a telephone, to interact with a patient. Telemedicine companies provided telemedicine services, or telehealth services, to individuals by hiring doctors and other health care providers.

14.     Medicare covered expenses for specific telehealth services if certain requirements were met. These requirements included that: (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via an interactive audio and video telecommunications system; and (c) the beneficiary was in a practitioner's office or a specified medical facility—not at a beneficiary's home—during the telehealth service with a remote practitioner. In or around March 2020, in response to the COVID-19 pandemic and in order to enable access to care during the public health emergency, some of these requirements were amended temporarily to, among other things, cover telehealth services for certain office and hospital visits, even if the beneficiary was not located in a rural area or a health professional shortage area and even if the telehealth services were furnished to beneficiaries in their home.

**The Defendants and Related Individuals and Entities**

15.     **JASON MATTHEW BONAVENTURA ("BONAVENTURA")** was a resident of Broward County, Florida, in the Southern District of Florida.

16.     **SAMUEL STEPHEN PANY ("PANY")** was a resident of Broward County, Florida.

17.     **ANTHONY JOSEPH GOULD ("GOULD")** was a resident of Broward County, Florida.

18.     **JOSEPH ANTHONY ZAPPOLI III ("ZAPPOLI")** was a resident of Broward County, Florida.

19.     Individuals 1 and 2 were residents of Broward County, Florida, and **BONAVENTURA**'s family members.

20.     Individual 3 was a resident of Broward County, Florida, and a family member of **JOSEPH ANTHONY ZAPPOLI III**.

21.     Co-Conspirator 1 was a resident of Broward County, Florida.

22.     Co-Conspirator 2 was a resident of Broward County, Florida.

23.     Ridgeline Medical, Inc. ("Ridgeline") was a Florida company located at 12427 Northwest 35th Street, Coral Springs, Florida, that purportedly provided DME to Medicare beneficiaries. **SAMUEL STEPHEN PANY** was the listed owner of Ridgeline. **JASON MATTHEW BONAVENTURA** was a beneficial owner, operator, and/or manager of Ridgeline.

24.     Infinite Medical Inc. ("Infinite") was a Florida company located at 1750 North University Drive, Suite 229, Coral Springs, Florida, that purportedly provided DME to Medicare beneficiaries. Individual 1 was the listed owner of Ridgeline and Individual 2 was the listed Vice

President. **JASON MATTHEW BONAVENTURA** and **SAMUEL STEPHEN PANY** were beneficial owners, operators, and/or managers of Ridgeline.

25.     Sawgrass Medical Supplies Inc. ("Sawgrass") was a Florida company located at 12415 Northwest 35th Street, Coral Springs, Florida, that purportedly provided DME to Medicare beneficiaries.   Co-Conspirator 1 was the listed owner of Sawgrass.   **JASON MATTHEW BONAVENTURA** and **SAMUEL STEPHEN PANY** were beneficial owners, operators, and/or managers of Sawgrass.

26.     18221 Enterprises LLC d/b/a LifeLong Medical Equipment ("LifeLong") was a Florida company located at 8401 Lake Worth Road, Suite 110, Lake Worth, Florida, that purportedly provided DME to Medicare beneficiaries. **ANTHONY JOSEPH GOULD** was the listed owner of LifeLong. **SAMUEL STEPHEN PANY** and **JOSEPH ANTHONY ZAPPOLI III** were beneficial owners, operators, and/or managers of LifeLong.

27.     Family Medical Equipment, LLC ("Family") was a Florida limited liability company located at 8401 Lake Worth Road, Suite 214, Lake Worth, Florida, that purportedly provided DME to Medicare beneficiaries. Individual 3 was the listed owner of Family. **SAMUEL STEPHEN PANY** and **JOSEPH ANTHONY ZAPPOLI** were beneficial owners, operators, and/or managers of LifeLong.

28.     Cardinal Care Medical Supply, Inc. ("Cardinal") was a Florida company located at 610 North Congress Avenue, Suite 110B, Delray Beach, Florida, that purportedly provided DME to Medicare beneficiaries.   Co-Conspirator 2 was the listed owner of Cardinal.   **JOSEPH ANTHONY ZAPPOLI** was a beneficial owner, operator, and/or manager of Cardinal.

29.     LMB Medical Supply LLC ("LMB") was a Florida company located at 9600 West Sample Road, Suite 203, Coral Springs, Florida, that purportedly provided DME to Medicare

beneficiaries.  **JASON MATTHEW BONAVENTURA** was a beneficial owner, operator, and/or manager of LMB.

30.     Bridge Marketing, LLC was a Florida limited liability company located at 8385 Northwest 46th Drive, Coral Springs, Florida, that purportedly provided marketing services. **JASON MATTHEW BONAVENTURA** was a beneficial owner, operator, and/or manager of Bridge Marketing, LLC.

31.     Pany Trust LLC  was a Florida limited liability company located at 808 Southeast 13th Court, Deerfield Beach, Florida, that purportedly provided marketing services.  **SAMUEL STEPHEN PANY** was a beneficial owner, operator, and/or manager of Pany Trust LLC.

32.     JAZ Marketing LLC was a Florida limited liability company located at 10101 West Sample Road, Coral Springs Florida, that purportedly provided marketing services.  **JOSEPH ANTHONY ZAPPOLI** was a beneficial owner, operator, and/or manager of JAZ Marketing LLC.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.     The General Allegations section of this Information is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around November 2017, and continuing through in or around February 2021, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**JASON MATTHEW BONAVENTURA,**
**SAMUEL STEPHEN PANY,**
**ANTHONY JOSEPH GOULD, and**
**JOSEPH ANTHONY ZAPPOLI III,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with each other, Co-Conspirator 1, Co-Conspirator 2, and others known and unknown to the United States Attorney, to commit an offense against the United States,

7

that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) soliciting, receiving, offering, and paying kickbacks and bribes in exchange for the referral of Medicare beneficiaries and doctors' orders for DME; (b) offering, paying, and causing the payment of kickbacks and bribes to purported telemedicine companies and to marketing companies in exchange for ordering and arranging for the ordering of DME for Medicare beneficiaries, without regard to whether the items were medically necessary and eligible for reimbursement; (c) submitting and causing the submission of false and fraudulent claims to Medicare through DME companies, including Ridgeline, Infinite, Sawgrass, LifeLong, Family, Cardinal, LMB, and others, for DME that was medically unnecessary and ineligible for reimbursement; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy, included, among other things:

4.     **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY, JOSEPH ANTHONY ZAPPOLI III**, and their co-conspirators acquired DME companies, including Ridgeline, Infinite, Sawgrass, LifeLong, Family, Cardinal, and LMB.

5.     **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY, JOSEPH ANTHONY ZAPPOLI III**, and others agreed that **ANTHONY JOSEPH GOULD**, Individuals 1 and 3, and Co-Conspirators 1 and 2 would be the listed owners of most of these DME companies and agreed to conceal **BONAVENTURA, PANY**, and **ZAPPOLI**'s beneficial ownership interest, which was not disclosed on the DME companies' CMS Form 855S.

6.     For the DME companies they were listed owners of, **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY**, and **ANTHONY JOSEPH GOULD** certified to Medicare that they would comply with all Medicare rules and regulations and federal laws, including the Federal Anti-Kickback Statute, the requirement not to knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare, and the requirement not to submit claims with deliberate ignorance and reckless disregard of their truth or falsity.

7.     **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY, ANTHONY JOSEPH GOULD, JOSEPH ANTHONY ZAPPOLI III**, and their co-conspirators paid illegal kickbacks and bribes to purported telemedicine and telemarketing companies in exchange for doctors' orders for DME that was medically unnecessary and ineligible for reimbursement. In many instances, these doctors' orders were written by doctors who did not have a preexisting doctor-patient relationship with the beneficiaries, were not treating the beneficiaries, did not conduct a physical examination of the beneficiaries, and did not conduct a proper telemedicine visit. In some instances, the signatures on doctors' orders were forged.

8.     **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY, ANTHONY JOSEPH GOULD, JOSEPH ANTHONY ZAPPOLI III**, and their co-conspirators also agreed to refer Medicare beneficiaries and doctors' orders for medically unnecessary DME to other DME companies and marketers in exchange for illegal kickbacks and bribes paid to Bridge Marketing, LLC, Pany Trust LLC, and JAZ Marketing LLC.

9.     **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY, ANTHONY JOSEPH GOULD, JOSEPH ANTHONY ZAPPOLI III**, and their co-conspirators concealed and disguised the scheme and the existence and source of these illegal kickbacks and bribes, including by entering into sham contracts and agreements, and falsely describing them in contracts, invoices, and other documents as purported payments for legitimate services.

10.     **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY, ANTHONY JOSEPH GOULD, JOSEPH ANTHONY ZAPPOLI III**, and their co-conspirators caused DME companies—including Ridgeline, Infinite, Sawgrass, LifeLong, Family, Cardinal, LMB, and others—to submit over $25 million in false and fraudulent claims to Medicare for DME that was (a) induced through illegal kickbacks and bribes, (b) medically unnecessary, and/or (c) ineligible for reimbursement.  Medicare paid over $10 million for these claims.

11.     **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY, ANTHONY JOSEPH GOULD, JOSEPH ANTHONY ZAPPOLI III**, and their co-conspirators used the fraud proceeds received from Medicare and the kickback and bribe payments received from DME companies and marketers to benefit themselves and others, and to further the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **JASON MATTHEW BONAVENTURA, SAMUEL STEPHEN PANY, ANTHONY JOSEPH GOULD,** and **JOSEPH ANTHONY ZAPPOLI III,** have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Information, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

4.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant,

      (a)      cannot be located upon the exercise of due diligence;

      (b)      has been transferred or sold to, or deposited with a third party;

      (c)      has been placed beyond the jurisdiction of the Court;

      (d)      has been substantially diminished in value; or

      (e)      has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

11

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

JOSEPH EGOZI
ASSISTANT UNITED STATES ATTORNEY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: **24-60059-CR-COHN/VALLE**

v.

JASON MATTHEW BONAVENTURA, et al.

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendants.

**Court Division** (select one)

☐ Miami  ☐ Key West  ☐ FTP
☒ FTL  ☐ WPB

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)  (Check only one)
   I   ☒ 0 to 5 days        ☐ Petty
   II  ☐ 6 to 10 days       ☐ Minor
   III ☐ 11 to 20 days      ☐ Misdemeanor
   IV  ☐ 21 to 60 days      ☒ Felony
   V   ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No)  No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
Joseph Egozi
Assistant United States Attorney
Court ID No.    A5502707

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**:   JASON MATTHEW BONAVENTURA

**Case No**: _____

Count #1:

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment: Ten (10) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000 or Twice the Gross Gain or Loss Resulting from the Offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: __SAMUEL STEPHEN PANY__

**Case No**: _____

Count #1:

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment: Ten (10) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000 or Twice the Gross Gain or Loss Resulting from the Offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  ANTHONY JOSEPH GOULD

**Case No:** _____

Count #1:

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349
**\* Max. Term of Imprisonment: Ten (10) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three (3) Years**
**\* Max. Fine: $250,000 or Twice the Gross Gain or Loss Resulting from the Offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: _ JOSEPH ANTHONY ZAPPOLI III

**Case No**: _____

Count #1:

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment: Ten (10) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000 or Twice the Gross Gain or Loss Resulting from the Offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| Jason Matthew Bonaventura, | ) | **24-60059-CR-COHN/VALLE** |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
| v. | ) | Case No. |
| | ) | **24-60059-CR-COHN/VALLE** |
| Joseph Anthony Zappoli III, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

       I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

       After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
| v. | ) | Case No. |
| | ) | **24-60059-CR-COHN/VALLE** |
| Anthony Joseph Gould, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

       I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

       After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| Samuel Stephen Pany, | ) | **24-60059-CR-COHN/VALLE** |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.


Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*